McKinney, J.,
delivered the opinion of the Court.
The complainants are a portion of the joint creditors of the late mercantile firm of Snodgrass & Brothers. Joseph Snodgrass, the senior member of said firm, died in July, 1868, and immediately after his death, to-wit: *433 on the 17th day of July, 1858, the surviving members of the firm, Lafayette and James H. Snodgrass, made an assignment, by deed of trust, to the defendant, Dib-rell, as trustee, of all the property and effects, of every description, belonging to said firm, including real estate, stock of goods, and debts due to the concern.
The firm, at the death of. Joseph Snodgrass, was largely indebted to the complainants, (who are merchants of New York, Philadelphia, and Nashville,) for goods purchased in the Eall of 1857, and likewise to a large number of persons at home; and was then really insolvent, to the extent of many thousands of dollars.
The assignment proposes to be for the benefit of all the creditors of the firm, and all are named, including the complainants; but, by reason' of the preference given to the domestic creditors, it is probable that but little, if anything, will be left for the complainants. Among the class of preferred creditors, there are a large number, perhaps upwards of twenty, the respective amounts of whose debts, are not stated at all. There are also a large number of debts provided for in the preferred list, which, prima fade, are individual debts of the several partners, and not debts of the firm.
By the terms of the deed, the trustee is to take possession of the “lands, tenements, town lots, goods, wares, drugs, jewelry, merchandise, property and effects, hereby assigned and conveyed; and sell and dispose of the same, upon such terms and conditions, as, in his judgment, may appear best, and most for the interest of all the parties concerned, and convert the same into cash,” &g. The deed further provides, that if the trustee *434 “ fails to make a sale of all the property, both real and personal, within eighteen months from this date, that he shall proceed to advertise,” &c.
The trustee is required, out of the proceeds, first, to satisfy in full, a long list of preferred domestic creditors, whose names occupy nearly two pages, and among whom are included the trustee himself, and several family relatives of the makers of the deed. The surplus is to be distributed pro rata among the complainants, and other creditors, not included in the privileged class.
The attachment, in the present case, was not issued until the 22d of November, 1858, more than five months after the date of the assignment.
It appears from a schedule, exhibited by the trustee, with his answer, that the entire assets of the firm, of every description, except the land, was estimated at upwards of $40,000. It likewise appears from said schedule, that, after Ms acceptance of the trust, and before the service of the attachment, he realized from the trust property, and paid to certain of the preferred creditors, upwards of $15,000. The residue of the property seized upon the attachment, was placed in the hands of a Receiver, by order of the Chancellor, who appointed the Trustee, Receiver. An application was made by Dibrell, as Trustee and Receiver, for a sale of the real estate, which was decreed accordingly.
The bill impeaches the assignment for fraud, both in law and in fact, and also upon other grounds.
The Chancellor decreed the assignment void in law, on the ground that the surviving partners did not possess the power to make an assignment to a trustee of the partnership effects, and more especially an assign *435 ment giving a preference to some of the partnership creditors over others.
It may be observed, before noticing the material grounds relied upon to avoid the assignment, that the objection to the legal competency of the trustee to execute the trust, in the shape in which it is presented to us, is of no importance. The objection is this: The trustee, at the time of his appointment as such, was the Clerk of the County Court of White. He, in form, before entering upon the execution of the trust, gave a bond, and t,ook an oath, as prescribed by sec. 1974 of the Code — the bond being taken by the deputy Clerk, and the oath administered by him also.
This was clearly not allowable. The Clerk himself is the person designated by law, to take and preserve the bond; and to administer the oath. These acts can not, in the existing state of our law, be performed by the principal Clerk before his deputy; and, consequently, unless exonerated from the obligation to give bond and take the oath, by the beneficiaries in the trust, (as may be done, by the section above referred to,) the Clerk is not legally competent to act as trustee.
Admitting this to be so, however, it in no way affects the validity of the trust, or the interests of the beneficiaries. The law referred to provides for the appointment of another, to act in all cases where the trustee fails to qualify; and, of course, the case of a trustee incompetent by ■ law to act, is embraced: Sec. 1977. But, aside from this, in equity a trust is never allowed to fail, or to bo affected, for want of a trustee.
We proceed to notice the more important grounds upon which the validity of the deed of trust is assailed.
*436 1st. The charge of intentional fraud, in making the assignment, is very positively denied by the defendants, and is not sufficiently supported by the proof. It is true, there are matters apparent upon the face of the deed, which furnish prima facie evidence, perhaps, of fraud in fact; but these suspicious circumstances, or badges of fraud, are sufficiently explained in the answers and proof, to repel the presumption of intentional fraud.
2d. It is said that it was fraud, in law, at least upon the complainants, to embrace in the assignment debts that were not due from the partnership, but from the individual members of the firm.
If the fact were shown to be so, the legal conclusion insisted upon would not follow, as was decided in Lassell vs. Tucker, & Sneed, 1.
But the matter of fact, except in a very few instances, is shown not to be as assumed, and that in fact, the debts, though apparently the individual debts of the separate partners, were, in reality, partnership debts:
It is clear, that wherever the original credit was given to the partnership, that will constitute a debt against the partnership, notwithstanding the partner contracting the .debt may have given his own separate security, or made himself personally liable therefor. And, on the other hand, if the original credit was exclusively given to the partner contracting the debt, the partnership will not be liable therefor, although it has been applied to the use and benefit of the firm, (Story on Part., sec. 367,) unless, indeed, the debt thus contracted by the partner on his own account, exclusively, has been immediately assumed by the partnership, with the assent *437 of the creditor, as a partnership debt. It will, then, henceforth be treated in favor of the creditor as a joint debt. So, if one ■ partner is separately entrusted with trust money, and, with the knowledge and assent of the partners, he applies it to the partnership purposes, it will constitute a joint debt against the partnership, at the election of the beneficiary: Id., 368.
There is no doubt that, under certain circumstances, and upon a sufficient consideration, by agreement of the partners, and with the consent of the creditors, the separate debts of one partner may be converted into the joint debts of the partnership, and the joint debts of the partnership into the separate debts of one partner: Id., 369-370. It is generally true, however, that in order to bind the firm, the partner contracting the debt must have had an original authority to do so, and have exercised it on the" credit and account of the firm, and not on his own exclusive credit or account; or else, the transaction must have been subsequently ratified and adopted by the firm, as one for which they were originally liable, or for which they have elected to become jointly liable, or to give their joint security: Id., 148, 146.
From these principles, it will easily be seen what debts embraced in the assignment are partnership debts, and what remain the separate debts of the individual partners.
3d. It is also insisted, that the omission in the deed to state the respective amounts due to a large number of the preferred creditors, if not sufficient to avoid the deed altogether, will at least, avoid it pro tanto.
It is certainly proper, for various reasons, that the *438 debt intended to be secured, should be described with sufficient certainty, either in the deed, or by reference to a schedule accompanying it; and the omission to do so, if not satisfactorily explained, cannot fail to excite suspicion. But, it would seem, from the authorities, that if there be nothing else to impeach the fairness and bona fides of the transaction, neither the validity of the deed, nor the security designed for the creditor whose debt is omitted to be specified, will be affected thereby. It has been held, that where there was a mistake in the assignment, in stating the debt at less than the amount really due and intended to be secured, that the mistake might be shown, and that the trust would include the true amount of the debt: Brown vs. Weir, 5 Serg. & Rawle, 401. See, also, 2 Metcalf, 105, to the same effect. So, it has been held in Louisiana, that the debt may be described by the name of the debtor, and its amount left to be ascertained : 1 Rob. La. Rep., 1. And in a recent case in New York, where the description of the creditors was, as a class of “laborers and workmen” of the assignors, residing in Albany and Buffalo, not mentioning the names of the persons, or the respective amounts due to each, it was held that the assignment would not bo avoided on this ground: 22 Barbour, 550. In all such cases, however, it ought to appear very clearly, that the omission was not a meditated subterfuge, with the view of leaving an opening for fraudulent or unfair practices; and the existence and true amount of the debt, at the date of the assignment, should be fully established.
4th. It is next insisted, that the surviving partners had no power to make an assignment of the partnership *439 effects to a trustee, for the benefit of creditors, with or without preferences, of either the personalty or realty belonging to the firm.
This objection presents a question of serious difficulty, and one upon which the authorities are directly at variance. The power of one partner to make a general assignment of all the partnership property, so as to break up its operations, has been regarded as doubtful by some of the authorities: Story on Part., sec. 101, note 4, and cases cited; Burrill on Assignments, (2d ed.,) 45 to 65, where the cases are more fully referred to; 3 Kent’s Com., 47, note. The current of authority, however, is, perhaps, in favor of such a power: 5 Sneed, 1.
A much more difficult question is, as to the power of one partner, where all are living, and capable of acting in the matter, and might be consulted, to make such an assignment of the partnership effects to a trustee, for the benefit of creditors, without the consent, or against the will, of his co-partners, even though all the creditors be admitted to an equal participation of the proceeds, by the terms of the assignment. The power to make such an assignment is denied by numerous cases, more especially when it assumes to give preferences to some of the joint creditors; and in other cases the power is distinctly maintained. See the authorities above referred to, where most of ‘the cases, on both sides of the question, are noticed.
The case of Lassell vs. Tucker, 5 Sneed, 1, maintains the doctrine that one partner, in the absence of his co-partner, may make a valid assignment, to a trustee, of all the partnership effects, for the security and payment of the partnership debts. This case simply involved the *440 question of the power of one partner to make such an assignment in the absence of the other. The questions as to the power of giving preferences, the effect of the dissent of the other partner to such an assignment, were not in the case. In this State, these are still open questions, and in regard to them, the law can scarcely be said to be settled. '
If required now to express an opinion, we should feel reluctant to yield our assent to the doctrine, that it is compatible with the fundamental principles upon which the partnership relation is based, that one partner should be held to possess the authority to exclude his co-partner from all participation in the determination of the question, whether or not an assignment should be made, and if so, to whom made, and for the benefit of what creditors of the firm. The question would be different, of course, where the emergency did not admit of consultation with the other partner, as if he were absent, or incapable of acting in the matter; and upon this distinction, the case of Lassell vs. Tucker, is not inconsistent with our present views.
But, however this may be, in a case where the partners are all living at the time of the assignment; the question, more properly for our determination, in the case before us, is, whether or not, after a dissolution of the partnership, by the death of one member, the surviving partners have authority to make an assignment of all the partnership effects, real and personal, to a trustee, with preference to some of the joint creditors— the partnership being insolvent.
We are aware, that upon this question, as upon most others connected with this general subject, there *441 are conflicting authorities. See Story on Part., and Burrell on Assignments, above referred to.
It seems to us, that the doctrine which asserts such a power in the surviving partners, is reeoncileable with the established rights, as declared by law, of the representatives of the deceased partner, as well as of the joint creditors of the firm, and consequently, cannot be sound.
All the books agree, that a dissolution by the death of one partner, ipso facto, puts an end to the partnership: Story on Part., sec. 342. The partners, from the time of dissolution, became distinct persons, and tenants in common, of the joint stock: 3 Kent’s Com., (2nd ed., 63.) And the personal representative of the deceased partner becomes a tenant in common with the survivors, of all the partnership property and effects in possession: Story on Part., sec. 346. It is true, that to a limited extent, and for particular purposes, the partnership is said to subsist: that is, so far, and only so far, as it may be indispensably necessary to enable the surviving partner to wind up and settle the affairs of the partnership: Id., 344, 325.
Upon the dissolution, each partner, in the words of Mr. Story, (Ibid., sec. 326,) has a perfect right to require, that the partnership funds shall be directly and regularly applied to the discharge of the partnership debts and liabilities; and after these are discharged, to have his share of the residue of the partnership funds. And this right is a lien upon the partnership effects, as between the partners. The personal representative of the deceased partner, has the same lien, or equitable right; and hence, it was not merely his right, *442 but his imperative duty, to insist upon a due and regular application of the joint effects, to discharge the joint debts, and after that, to receive and apply the residue in the proper discharge of his trust: Id., 361. This is a right, and a duty which the personal representative cannot surrender, or forego. It is enjoined upon him by law. How then can it be held, that, in direct opposition to this right and duty, and lien of the personal representative, the surviving partners may assign the effects to a trustee, to be disposed of as they may choose to direct, among their favorite creditors? How can this consist with the acknowledged lien of personal representative — or, how can it be said to be within the scope of the proper duty and power of the surviving partners ?
And the doctrine, it is obvious, is no less inconsistent with the rights of the joint creditors, who have also an equity, or quasi lien, under and through the specific lien of the partners themselves, entitling them to have the partnership effects ratably appropriated to the discharge of each and all of the joint debts, in case of a dissolution, by the death or bankruptcy of one of the partners: Ibid., sec. 361; 2 Story’s Eq. Jur., 1253.
This well established equity, of all the joint creditors, (in case of a dissolution by the death or bankruptcy of one partner,) to have an equal distribution of the partnership effects, cannot, possibly, as it seems to us, be reconciled with the supposed authority of the surviving partners, to make an assignment of all the effects, and thereby, either wholly or partially, to defeat the rights of a portion of the creditors: These conflicting rights cannot co-exist.
*443 6th. Another insuperable objection to this particular assignment, grows out of the provisions, conferring upon the trustee an unlimited discretion, as to the “terms and conditions” of the sale; and, in effect, putting it in his power to delay, for a period of “eighteen months,” before he could be forced to make a sale.
In noticing this objection, we, of course, have no reference to ordinary assignments: For, as a general rule, it is well settled in this State, and elsewhere, that a reasonable discretion given to the trustee, in regard to the terms of sale, or the giving a reasonable length of time for the execution of the trust, will not affect the validity of the assignment.
The objection is restricted to this peculiar case: The case of an insolvent partnership, dissolved by the death of one of the partners. In such a case, it seems to us, that the discretion attempted to be given to the trustee, in respect to the terms of sale, and the time within which the trust shall be executed, is equally at variance with the prescribed duty of the surviving partner, and the recognized rights of the creditors of the firm. In such a case, it is alike the duty of the surviving partners, and the right of the creditors, to have the effects of the dissolved and insolvent concern, converted into money, without any unnecessary delay, and applied to the payment of the debts. And, by the implied terms of the contract of partnership, as well as by implication of law, the surviving partners, themselves, if capable of acting in the matter, are the proper persons upon whom this responsible trust is devolved. The attempt of the surviving partners to throw off this responsibility upon a stranger, and to commit the inter *444 ests of the representative of the deceased partner, and the creditors, to his mere judgment and discretion, and withal, to interpose a delay of eighteen months, before he can be called upon to execute the trust, is, in our opinion, contrary to the clearly established legal and equitable rights of the representative of the deceased partner, and the creditors of the firm; and consequently, cannot be allowed.
6th. In regard to the real estate: The doctrine that one partner may dispose of all the partnership property and effects, for any and all purposes within the scope and objects of the partnership, and, in the course of its trade and business, is, upon general principle, confined strictly to personal property, and does not extend to real estate, held by the partnership. In such a case, one partner cannot transfer the real property belonging to the firm, for it belongs to the partners as tenants in common, and neither partner can convey more than his undivided interest: Story on Part., 101, 94, 92; 2 Story’s Eq. Jur., sec. 1207. It is, nevertheless true, that all real estate purchased for the partnership, and paid for out of the funds thereof, is regarded as part of the partnership stock and effects, in the view of a Court of Equity, if not of Courts of Law. No matter how the title may stand at- law, or in whosesoever name it may be, it will in equity, be treated as belonging to the partnership: Ibid, 92, 98. But still, according to the settled general law, there is no survivorship in the real estate of the partnership: Ibid, sec. 92; 2 Story’s Eq.. Jur., sec. 1207.
But by our Act of 1784, ch. 22, sec. 6, which abolishes joint tenancy, it is provided: “ That estates held *445 in joint tenancy, for the purposes of carrying on and promoting trade and commerce, or any other useful work or manufacture, established and pursued with a view of profit to the partners therein concerned, shall he vested in the surviving partner or partners, in order to enable him or them to settle and adjust the partnership business, and pay off the debts which may have been contracted in pursuit of the said joint business,” &c. Upon the construction of this Act, it was held, in the case of McAlister vs. Montgomery, 3 Hayn., 94, that the property remains in the survivor till the partnership be j settled; and that sales, in the meantime, of land held for the purposes of the business, are as valid as sales of personal property, under the same circumstances. See, also, 6 Ter., 20. But nothing in the Act of T784, or in the cases referred to, gives any support to the assignment of the real estate made by the surviving partners in the present case.
7th. Another question is presented: It has been already stated that the trustee, in the interval between the date of his qualification and the service of the attachment, actually realized upwards of $15,000 of the trust funds, which he appropriated to the satisfaction of his own, and other preferred debts. The question is, can 'these payments be allowed to stand? We think not. The assignment being unauthorized, and in violation of the rights of the joint creditors to share ratably the effects of the insolvent firm, it necessarily follows, that the appropriation of the fund made by the trustee was unauthorized and unequitable, as against the complainants.
The individual creditors of the several partners had *446 no equity whatever to receive anything, until after the joint creditors were first satisfied; and the joint creditors, embraced in the preferred list, had no equity to receive anything more than their ratable share, with the other joint creditors, of the effects of the insolvent firm. Consequently, the separate creditors of the partners must refund the respective amounts paid to them by the trustee, with interest thereon. And such of the joint creditors as may have received from the trustee, beyond what shall be ascertained to be their respective ratable shares of the entire fund, will likewise be required to refund the excess, with interest thereon. And if, after satisfaction of the joint creditors, any surplus should be left, it will be subject to a ratable division among the separate creditors.
The decree will be affirmed, and the cause remanded for an account, and such further proceedings as may be thought necessary, with leave to amend, by bringing the several parties to whom payments may have been made by the trustee, before the Court.